Reuben D. Nathan, Esq. (SBN 208436)
**NATHAN & ASSOCIATES, APC**
2901 W. Coast Hwy., Suite 200
Newport Beach, CA 92663
Office: (949) 270-2798
Email: rnathan@nathanlawpractice.com

Ross Cornell, Esq. (SBN 210413)
**LAW OFFICES OF ROSS CORNELL, APC**
P.O. Box 1989 #305
Big Bear Lake, CA 92315
Office: (562) 612-1708
Email: rc@rosscornelllaw.com

Attorneys for Plaintiff, MONICA DAWKINS

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MONICA DAWKINS, on behalf of herself and all similarly situated persons,<br><br>Plaintiff,<br><br>v.<br><br>PREFERRED BANK, a California-chartered commercial bank,<br><br>Defendant. | Case No.: 1:26-cv-04913-JLT-SAB<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>1) Cal. Penal Code § 631<br>2) 18 U.S.C. § 2511(1)(a)<br>3) Cal. Constitution Art. I § 1<br>4) Intrusion Upon Seclusion<br>5) Quasi-Contract / Restitution Based on Unjust Enrichment |

1. Plaintiff MONICA DAWKINS ("Plaintiff") files this class action complaint on behalf of herself and all others similarly situated (the "Class Members") against Defendant PREFERRED BANK, a California-chartered commercial bank ("Defendant" or "Preferred Bank"). Plaintiff brings this action based upon personal knowledge of the facts pertaining to herself, and on information and belief as to all others, by and through the investigation of undersigned counsel.

## I. NATURE OF THE ACTION

2. This is a class action lawsuit brought on behalf of all California residents who have accessed and used www.preferredbank.com (the "Website"), a website that Defendant own, operate, and provide for public access and use.

3. During her use of the Website, Plaintiff navigated to multiple pages on the Website, unaware that Defendant was causing and permitting Third Parties to intercept the content of her communications and reveal her personal and sensitive browsing activity, including her verbatim on-site search queries and communications reflecting her interest in debt-consolidation and other consumer finance products and tools.

4. Defendant caused the interception of the contents of Plaintiff's communications with the Website, including the page URLs identifying what she was browsing, the verbatim page titles, and the referrer URLs reflecting prior navigation, all of which were transmitted to the Third Parties during the page-load process itself.

5. As set forth in the Specific Allegations section of this Complaint below, Defendant surreptitiously embeds and operates third-party tracking technologies on the Website that intercept the contents of users' electronic communications, including the page URLs reflecting what users are browsing, in real time and without notice or consent. Defendant intentionally deploys these technologies to accomplish their commercial objectives, including identity resolution, audience segmentation, and the monetization of users' browsing activity through targeted advertising.

6. Defendant deploys these interception technologies in violation of the California Invasion of Privacy Act, Cal. Penal Code § 631, and the Federal Wiretap Act,

18 U.S.C. § 2511(1)(a). Defendant has done so from prior to the beginning of the class period in this case and continuously through to today and ongoingly.

7. Plaintiff personally used the Website during the class period and preserved an HTTP archive file (commonly known as a HAR file) of her own browsing session. The URLs, parameters, identifiers, and responses alleged below are from that file. Counsel caused a technical investigation to be conducted that replicated URLs and user flows presented in Plaintiff's HAR file. The figures and screenshots reproduced below are from that investigation and are included herein as illustrative examples of how the Website's tracking technologies operated when Plaintiff visited the Website.

## II. GENERAL ALLEGATIONS

8. A pixel tracker, also known as a web beacon, is a tracking mechanism embedded in a website that monitors user interactions. It typically appears as a small, transparent 1x1 image or a lightweight JavaScript snippet that activates when a webpage is loaded, or a user performs a tracked action.

9. When triggered, the pixel causes the user's browser to transmit data to third-party servers, including the contents of the user's communications with the Website such as page URLs identifying what the user is browsing, search-query parameters, page titles, and referrer URLs reflecting prior navigation.

10. When users visit the Website, Defendant causes tracking technologies to be embedded in visitors' browsers. These include, but are not limited to, the following:

- The Google Analytics Trackers

11. The third parties who operate the above-listed trackers use the intercepted contents of users' communications collected via the Website for their own independent purposes tied to broader advertising, identity-resolution, and audience-measurement ecosystems, and for data monetization strategies that go beyond Defendant's direct needs, for their own financial gain. The above-listed trackers are referred to herein collectively as the "Trackers" and their operators below are referred to collectively as the "Third Parties."

12. The Trackers are operated by Google LLC. Defendant knowingly embeds and deploys the Trackers on the Website to facilitate the third parties' interception of the contents of users' electronic communications.

13. The third-party tracking code executed contemporaneously with each page load and navigation event initiated by Plaintiff's browser. As the browser initiated each HTTP request to retrieve Website content, embedded scripts automatically caused the interception and transmission of the contents of users' communications with the Website to remote third-party endpoints during the page-load process itself, before the requested page finished rendering and without any user interaction or authorization.

14. Plaintiff and the Class Members did not consent to the installation, execution, embedding, or injection of the Trackers on their devices and did not consent to the contents of their communications with the Website being intercepted by third parties. The Website did not display any consent banner, pop-up, cookie notice, or other authorization mechanism requesting permission before deploying the Trackers to intercept user communications. Defendant did not obtain express prior consent for the interception and transmission of the contents of users' communications for advertising, analytics, or monetization purposes.

15. Generalized references herein to users, visitors and consumers expressly include Plaintiff and the Class Members.

## III. PARTIES

16. Plaintiff MONICA DAWKINS is a California citizen residing in Tulare County, California, and has an intent to remain there. Plaintiff was in California, in Tulare County, when she visited the Website, which occurred on multiple occasions during the class period including but not limited to on May 2, 2026.

17. Defendant Preferred Bank is a California-chartered commercial bank with its principal place of business in Los Angeles, California. Preferred Bank owns, operates, and controls the Website.

18. Through the Website and related digital platforms, Defendant conducts

banking, lending, and financial-services business directed at consumers nationwide and serves consumers in California and throughout the United States.

## IV. JURISDICTION AND VENUE

19. This Court has personal jurisdiction over Defendant because Defendant is a California-chartered commercial bank, is organized under the laws of California, maintains its principal place of business in California, is at home in California, and conducts continuous and systematic banking, lending, and financial-services business in California, and because Plaintiff's claims arise directly out of Defendant's California-directed conduct.

20. Defendant maintains its headquarters and principal place of business in Los Angeles, California, and operates banking offices in California. Defendant conducts its banking, lending, and financial-services operations in and from California.

21. Defendant operates the Website on a top-level domain directed to California consumers without any California-specific gating or geolocation restriction. The Website is the conduct at issue in this Complaint, and California consumers visiting the Website are the population from which Defendant intercepts communications.

22. Defendant deliberately installed and continues to operate Google Analytics tracking infrastructure on the Website. Google LLC is a California limited liability company headquartered in Mountain View, California. Defendant's deliberate installation of the Google Analytics endpoints causes outbound HTTP requests bearing California users' page URLs, verbatim page titles, search queries, and a persistent Google Analytics client identifier to flow continuously to Google's California-based infrastructure.

23. Plaintiff's claims arise directly out of and relate to Defendant's California conduct. When Plaintiff visited the Website, Defendant's deliberately installed tracking infrastructure caused Plaintiff's communications with the Website, including the URL and verbatim search query of her on-site search for "Debt consolidation" and the URL and title of the Debt Consolidation Calculator she used, to be transmitted in real time to

the California-based Google Analytics infrastructure, accompanied by a persistent user-level identifier.

24. Exercise of personal jurisdiction in this District over Defendant for these California-arising claims is reasonable and consistent with traditional notions of fair play and substantial justice.

25. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff asserts a claim arising under federal law, specifically 18 U.S.C. § 2520, which provides a civil cause of action for violations of 18 U.S.C. § 2511(1)(a) of the Federal Wiretap Act.

26. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because those claims are so related to the federal claim that they form part of the same case or controversy under Article III of the United States Constitution.

27. Venue is proper in the Eastern District of California pursuant to 28 U.S.C. § 1391(b) because (1) Defendant regularly transacts business in this District, operates the Website that serves California residents in this District, and is subject to personal jurisdiction here; (2) a substantial part of the events or omissions giving rise to the claims occurred within this District, including Plaintiff's California-located use of the Website from her Tulare County residence; (3) Plaintiff resides in this District; and (4) Defendant derives substantial revenue from California consumers in this District.

## V. FEDERAL AND STATE PRIVACY LAWS

### *1. The California Invasion of Privacy Act (CIPA)*

28. The California Invasion of Privacy Act (CIPA) is a legislative measure designed to safeguard the privacy rights of California residents by prohibiting unauthorized wiretapping and eavesdropping on private communications. The California Legislature recognized the significant threat posed by emerging surveillance technologies, stating that "the development of new devices and techniques for the purpose of eavesdropping upon private communications . . . has created a serious threat

to the free exercise of personal liberties and cannot be tolerated in a free and civilized society" (Cal. Penal Code § 630).

29. Despite predating the Internet, CIPA has been applied to email and other Internet communications so long as that application is consistent with the statutory text and purpose. Section 631(a) reaches the interception of email content and online communications and consent under CIPA must be obtained before the interception occurs.

30. CIPA's text and history confirm that the Legislature intended to protect core privacy rights, as reflected in § 630's declaration that the statute was enacted to protect the right of privacy of the people of this state. CIPA codifies a substantive right to privacy such that the violations of CIPA alleged herein constitute concrete injuries sufficient to establish Article III standing.

31. Individuals may pursue legal action against violators of Cal. Penal Code § 631 and are entitled to seek $5,000 in statutory penalties per violation. Cal. Penal Code § 637.2(a)(1).

***2. The Federal Wiretap Act***

32. The Federal Wiretap Act, enacted as Title III of the Omnibus Crime Control and Safe Streets Act of 1968 and amended by the Electronic Communications Privacy Act (ECPA) of 1986, prohibits the intentional interception of wire, oral, or electronic communications. Congress enacted the statute to safeguard the privacy of communications against unauthorized interception, recognizing that unchecked surveillance technology poses a fundamental threat to individual liberty.

33. The Federal Wiretap Act applies to communications transmitted over the Internet. The 1986 ECPA amendments expressly extended the statute's protections to electronic communications as defined under 18 U.S.C. § 2510(12) to include "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce." That includes data

transmitted over the internet such as the contents of web browsing activity via HTTP requests as alleged here.

34. A person whose electronic communications are intercepted in violation of 18 U.S.C. § 2511 may bring a civil action pursuant to 18 U.S.C. § 2520(a). Available relief includes the greater of actual damages or statutory damages of $100 per day for each day of violation or $10,000, whichever is greater, plus punitive damages in appropriate cases, reasonable attorney's fees, and other litigation costs reasonably incurred.

## VI. SPECIFIC ALLEGATIONS

35. Defendant owns, operates, and controls the Website, the consumer-facing digital channel through which Defendant offers and markets its banking, lending, deposit, and financial-services products to consumers nationwide. The Website includes financial-product pages and interactive on-site financial calculators, and an on-site search feature whose user-typed query terms are encoded directly into the search-results URL, with the result that a visitor's search-query input becomes part of the URL of the page the visitor is reading.

36. The third-party analytics infrastructure Defendant installed on the Website operates by causing the placement and recognition of persistent identifiers on the visitor's device, including a Google Analytics client identifier that Defendant causes to be stored as a first-party _ga cookie on the .preferredbank.com domain and transmitted to Google as the cid request parameter, enabling Google LLC to accumulate a cross-session record of the visitor's browsing and to build behavioral and audience profiles. The intercepted communication content of Plaintiff's and the Class Members' Website communications is thereby monetized through Defendant's commercial analytics and advertising arrangements with the Trackers identified herein.

37. During her use of the Website, and as reflected in her HAR file, Plaintiff navigated to the following URLs, unaware that Defendant was causing and permitting Third Parties to intercept the content of her communications:

- https://www.preferredbank.com/personal/loans-and-credit/mortgage-loans;
- https://www.preferredbank.com/calculator/compare-loan;
- https://www.preferredbank.com/search?q=Debt+consolidation;
- https://www.preferredbank.com/calculator/debt-consolidate;
- https://www.preferredbank.com/personal/electronic-banking/debit-cards; and
- https://www.preferredbank.com/personal/loans-and-credit/credit-cards.

38. Plaintiff alleges that the tracking mechanisms described below operated on the Website during Plaintiff's visits to the URLs identified above and intercepted the substantive contents of her communications with the Website. The figures that appear in the per-tracker subsection below depict the tracking behavior that the Website is configured to produce when a user visits the URLs, and evidence that Defendant's deliberately installed tracking infrastructure intercepted the contents of communications with the Website during Plaintiff's and the Class Members' sessions.

39. Beyond the URLs, each Tracker receives, during each of those page loads, the page URL identifying the content Plaintiff was viewing (transmitted in the dl parameter), the verbatim page title (transmitted in the dt parameter), the screen resolution (transmitted in the sr parameter), and a persistent Google Analytics client identifier (transmitted in the cid parameter), in the same outbound HTTP request. Each of those fields communicates the substance, purport, or meaning of what Plaintiff was reading or searching for on the Website, and is therefore content of Plaintiff's electronic communications within the meaning of Cal. Penal Code § 631(a) and 18 U.S.C. § 2510(8).

**1. *The Google Analytics Trackers (Google Analytics 4 and Google Analytics UA Legacy)***

40. Defendant embedded and deployed a coordinated pair of Google Analytics

trackers on the Website, operated by Google LLC across two distinct tracking endpoints: analytics.google.com/g/collect (Google Analytics 4, property G-878X4KS6Q1) and www.google-analytics.com/j/collect (Google Analytics UA Legacy, property UA-122458840-1).

41. The Google Analytics trackers fire automatically when a user visits the Website, transmitting the full page URL (in the dl parameter), the verbatim page title (in the dt parameter), the visitor's screen resolution (in the sr parameter), and a persistent Google Analytics client identifier (in the cid parameter) in the same outbound request. The cid identifier mirrors a first-party _ga cookie that Defendant causes to be stored on the visitor's browser under the .preferredbank.com domain, and the same cid value is transmitted in parallel to both Google Analytics endpoints, enabling Google LLC to join the data flowing from each endpoint into a single Google-identified user record. During Plaintiff's session, the _ga cookie stored under the .preferredbank.com domain held the value GA1.2.1955****86.1777762580, and the cid parameter transmitted to both Google Analytics endpoints held the identical client identifier, 1955****86.1777762580.

42. The Google Analytics 4 requests additionally transmit, in the Cookie header of the same request, the visitor's Google account cookies, including the NID and __Secure-3PSID family of cookies, allowing Google LLC to associate the browsing with the visitor's logged-in Google identity. Google LLC operates the largest website-analytics platform in the world, using intercepted browsing data to build behavioral and audience profiles and to support analytics-driven and interest-based advertising.

43. In addition to the parameters identified above, the Google Analytics 4 requests transmitted the URL of the page the visitor had previously viewed, in a named document referrer parameter. After Plaintiff navigated away from the search-results page, her browser transmitted the URL containing her verbatim search query to Google again on each of the two page loads that followed, in the same outbound requests that carried the persistent Google Analytics client identifier.

44. Plaintiff visited the Website at https://www.preferredbank.com/search?q=Debt+consolidation, the Website's on-site search-results page whose URL contains, in the q query parameter, Plaintiff's verbatim search query "Debt consolidation." When Plaintiff navigated to that URL, the Website caused Plaintiff's browser to transmit Google Analytics tracking requests to analytics.google.com and www.google-analytics.com, each of which carried the full search URL (including the verbatim "Debt consolidation" query), the page title, and the same persistent Google Analytics client identifier in the same outbound request. That same Google Analytics 4 request separately transmitted Plaintiff's search query in a dedicated named parameter: the request carried the event name view_search_results in the en parameter and Plaintiff's verbatim query, "Debt consolidation," in the ep.search_term parameter. Plaintiff's search query was therefore transmitted to Google both as a component of the page URL and as a discrete, labeled data field whose entire content was the query itself.

45. Figure 1 is a Fiddler Classic raw request capture showing a request transmitted from the user's browser to Google Analytics 4 at analytics.google.com/g/collect. The request contains the full URL of the page the user was browsing, including the search query "Debt consolidation," in the dl parameter, the verbatim page title in the dt parameter, the screen resolution in the sr parameter, and a persistent Google Analytics client identifier in the cid parameter, establishing that the page URL identifying the user's debt-consolidation search and the verbatim page title were transmitted to Google in the same outbound request as a persistent Google identifier.[1]

---

[1] Each figure reproduced in this section is a capture from counsel's replication of the URLs and user flows recorded in Plaintiff's HAR file, made on May 12, 2026 in browsing sessions separate from Plaintiff's. The Google Analytics client identifiers visible in the figures were assigned to those replication sessions and differ from the identifiers transmitted during Plaintiff's session, which are alleged in the text. The captures also display network requests other than the requests described in the accompanying paragraphs.

**Figure 1**




46. Figure 2 is a Fiddler Classic raw request capture showing a request transmitted from the user's browser to Google Analytics UA Legacy at www.google-analytics.com/j/collect. The request contains the full page URL in the dl parameter, the verbatim page title in the dt parameter, the screen resolution in the sr parameter, and the same persistent Google Analytics client identifier in the cid parameter, establishing that the page URL and verbatim page title were transmitted to a second Google Analytics endpoint in the same outbound request as the persistent Google identifier.

/ / /

/ / /

/ / /

## Figure 2




47. When Plaintiff navigated to https://www.preferredbank.com/calculator/debt-consolidate, the Website again caused Plaintiff's browser to transmit Google Analytics tracking requests to analytics.google.com and www.google-analytics.com, each carrying the full URL of the Debt Consolidation Calculator page, the verbatim page title "Debt Consolidation Calculator," and a persistent Google Analytics client identifier, such that the same Google identifier was reused across both pages Plaintiff visited and funneled across both Google Analytics endpoints.

48. During Plaintiff's session, Defendant caused persistent Google Analytics identifier cookies to be stored on Plaintiff's browser under the .preferredbank.com domain, including the _ga client-identifier cookie and the _ga_878X4KS6Q1 Google Analytics 4 session cookie, each set to expire on June 6, 2027. Figure 3 is a Chrome DevTools Application-panel capture showing the same cookies present in the cookie storage of a browser loading a Preferred Bank page.

/ / /

**Figure 3**




49. On each of the pages identified above, the Google Analytics trackers transmitted to Google the full page URL, the verbatim page title, the screen resolution, and the same persistent Google Analytics client identifier, in the same outbound request. The verbatim page titles transmitted included “Preferred Bank Mortgage Loans,” “Preferred Bank Loan Comparison Calculator,” “Search › Preferred Bank,” “Debt Consolidation Calculator,” “Personal Debit Cards › Preferred Bank,” and “Personal Credit Cards › Preferred Bank.”

50. Taken together, the URLs and page titles transmitted to Google during a single browsing session conveyed that the visitor was researching debt consolidation, loan comparison, mortgage lending, and consumer credit products on a commercial bank’s website.

51. The Google Analytics tracking requests fired automatically during the load of the Website pages Plaintiff visited, without any user interaction and without any request or authorization by Plaintiff.

52. On the search-results page and on the Debt Consolidation Calculator page,

the Google Analytics trackers transmitted the contents of Plaintiff's communications while Plaintiff's browser remained engaged in multiple additional requests to Defendant's own servers for content belonging to those same pages. Plaintiff's communications with the Website were ongoing, and the pages she had requested had not finished loading, when the contents of those communications were transmitted to Google.

53. On the search-results page, Plaintiff's browser transmitted the URL containing her verbatim search query to Google before her browser requested the corresponding search results from Defendant's own server. Google received Plaintiff's search query while her communication with the Website concerning that query was still in progress.

54. Google's server at analytics.google.com returned an HTTP 204 No Content response, and Google's server at www.google-analytics.com returned an HTTP 200 OK response, to the Google Analytics tracking requests, confirming that Google LLC received and processed the transmitted data in real time, during the transmission of Plaintiff's communications with the Website. Each response returned by www.google-analytics.com carried a fifteen-byte body. The body of one such response, preserved in Plaintiff's HAR file, was the text "2,cG-878X4KS6Q1" – the measurement identifier of the Website's Google Analytics 4 property, returned by Google in response to a request addressed to the separate Google Analytics UA Legacy endpoint.

55. Google LLC used the intercepted browsing data, including the URLs and verbatim page titles identifying Plaintiff's browsing activity (her verbatim on-site search for "Debt consolidation" and her use of the Debt Consolidation Calculator), tied to the persistent cid client identifier reused across both pages and both Google Analytics endpoints, to build cross-session behavioral and audience profiles and to support analytics-driven and interest-based advertising. The first-party _ga cookie set on .preferredbank.com (transmitted to Google as the cid parameter), together with the Google account cookies transmitted on the Google Analytics 4 requests, enable Google

LLC to link Plaintiff's communications with the Website to a continuing user profile across sessions, devices, and websites. The Google Analytics 4 requests transmitted during Plaintiff's session carried the npa parameter set to 0, and none of the Google Analytics requests transmitted during Plaintiff's session included the IP-anonymization (aip) parameter. Defendant applied no effective anonymization or consent mechanism to those transmissions. This commercial use of intercepted content is precisely what the Google Analytics trackers are designed and marketed to accomplish.

56. Google LLC did not receive the contents of Plaintiff's communications solely for Defendant's use. Google LLC used those contents for its own independent commercial purposes, including building cross-session behavioral and audience profiles and supporting interest-based advertising, beyond any use by Defendant.

57. The Google Analytics tracking requests transmitted during Plaintiff's session were addressed to Defendant's own Google Analytics properties, identified in those requests as G-878X4KS6Q1 and UA-122458840-1. Google LLC processes and analyzes the data it collects through those properties, aggregates that data, and presents the results to the account holder through an online Google Analytics account interface.

58. Google LLC is not a party to the communications between Plaintiff and the Website; it is a third-party interceptor that surreptitiously duplicated and captured those communications as they occurred. Defendant aided and abetted Google's interception by embedding and configuring the Google Analytics trackers on the Website, including by causing the first-party _ga client-identifier cookie to be stored on Defendant's own .preferredbank.com domain and transmitted to Google as the cid parameter. By causing Google LLC to intercept the contents of Plaintiff's electronic communications with the Website in this manner, Defendant violated Cal. Penal Code § 631 and 18 U.S.C. § 2511(1)(a).

## VII. CLASS ALLEGATIONS

59. Plaintiff brings this action individually and on behalf of all others similarly situated (the "Class" or "Class Members") defined as follows:

All persons within California whose electronic communications with the Website, including the URL contents of their HTTP requests to the Website, were intercepted by one or more Trackers between May 2, 2025 and the present.

60. NUMEROSITY: Plaintiff does not know the number of Class Members but believes the number to be in the thousands, if not more. The exact identities of Class Members can be ascertained by the records maintained by Defendant.

61. COMMONALITY: Common questions of fact and law exist as to all Class Members and predominate over any questions affecting only individual members of the Class. Such common legal and factual questions include but are not limited to:

- Whether Defendant configured the Website to transmit the URL contents of visitors' HTTP requests to the Trackers;
- Whether the URL contents of those requests constitute "contents" of electronic communications within the meaning of Cal. Penal Code § 631(a) and 18 U.S.C. § 2510(8);
- Whether Defendant's conduct constitutes interception of electronic communications in violation of Cal. Penal Code § 631(a);
- Whether Defendant's conduct constitutes intentional interception of electronic communications in violation of 18 U.S.C. § 2511(1)(a);
- Whether Plaintiff and Class Members are entitled to statutory damages;
- Whether Class Members are entitled to injunctive relief;
- Whether Defendant's conduct violates the California Constitution;
- Whether Defendant's conduct constitutes an intrusion upon seclusion;
- Whether Defendant was unjustly enriched at Plaintiff's and Class Members' expense;
- Whether Class Members are entitled to disgorgement of data unlawfully obtained; and
- Whether Class Members are entitled to restitution.

62. TYPICALITY: As a person who visited the Website and whose URL contents were intercepted by the Trackers, Plaintiff is asserting claims that are typical of the Class Members. Plaintiff's experience with the Trackers is typical to Class Members.

63. ADEQUACY: Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained attorneys experienced in class action litigation. All individuals with interests that are actually or potentially adverse to or in conflict with the Class or whose inclusion would otherwise be improper are excluded.

64. SUPERIORITY: A class action is superior to other available methods of adjudication because individual litigation of the claims of all Class Members is impracticable and inefficient. Even if every Class Member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation also presents a potential for inconsistent or contradictory judgments.

## VIII. FIRST CAUSE OF ACTION

### Violations of Cal. Penal Code § 631

### By Plaintiff and the Class Members Against Defendant

65. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

66. Plaintiff brings this cause of action on behalf of herself and the Class.

67. California Penal Code § 631(a) prohibits any person from willfully and without the consent of all parties to the communication reading, or attempting to read, or learning the contents or meaning of any message, report, or communication while the same is in transit, and from using or attempting to use, in any manner or for any purpose, any information so obtained. Section 631(a) further prohibits any person from aiding, agreeing with, employing, or conspiring with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things described above.

68. Plaintiff asserts this cause of action against Defendant under the fourth clause of § 631(a). The predicate violation is that of Google LLC. Google LLC, a third

party to Plaintiff's communications with the Website, willfully and without the consent of all parties to those communications read and learned the contents of those communications while they were in transit, and used the information so obtained. Defendant aided, agreed with, employed, and conspired with Google LLC to do, permit, and cause those acts by deliberately embedding and configuring the Google Analytics trackers on the Website and by causing the first-party _ga client identifier to be stored on Defendant's own .preferredbank.com domain and transmitted to Google as the cid parameter.

69. The full URLs of Plaintiff's and Class members' HTTP requests to the Website constitute the "contents" of those communications within the meaning of § 631(a). As described in the preceding tracker-specific allegations, the Trackers received human-readable copies of those URL strings during the same page-load transaction, while Plaintiff's browser remained actively communicating with the Website's servers concerning the same page, and therefore while those communications were in transit between Plaintiff's browser and the Website.

70. Defendant intentionally configured the Website to transmit Plaintiff's and Class members' URL contents to each Tracker, and permitted each Tracker to use that information for user profiling and targeted advertising. The Trackers are third parties to the communications between Plaintiff and the Website. Plaintiff and Class members did not consent to interception of the contents of their communications by any Tracker, and no other exception to § 631(a) applies.

71. Each interception constitutes a separate violation of § 631(a). Plaintiff and the Class are entitled to recover the greater of actual damages or $5,000 per violation pursuant to Cal. Penal Code § 637.2(a)(1), injunctive relief, and such other relief as the Court deems just and proper.

/ / /

/ / /

## IX. SECOND CAUSE OF ACTION

### Violations of 18 U.S.C. § 2511(1)(a)

### By Plaintiff and the Class Members Against Defendant

72. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

73. Plaintiff brings this cause of action on behalf of herself and the Class.

74. 18 U.S.C. § 2511(1)(a) prohibits any person from intentionally intercepting, endeavoring to intercept, or procuring any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication. The Federal Wiretap Act defines "contents" to include any information concerning the substance, purport, or meaning of a communication. 18 U.S.C. § 2510(8).

75. The full URLs of Plaintiff's and Class members' HTTP requests to the Website are "contents" of electronic communications within the meaning of 18 U.S.C. § 2510(8). Those URLs communicate the substance and meaning of Plaintiff's and Class members' browsing. As described in the preceding tracker-specific allegations, the Trackers intercepted those URL contents in real time, during the same page-load transaction and while Plaintiff's browser remained actively communicating with the Website's servers concerning the same page, and therefore while those communications were in transit.

76. Defendant intentionally configured the Website to transmit Plaintiff's and Class members' URL contents to each Tracker, and thereby procured each Tracker to intercept the contents of those communications. Defendant permitted each Tracker to use that information for user profiling and targeted advertising. The Trackers are third parties to the communications between Plaintiff and the Website. Plaintiff and Class members did not consent to this interception, and no other exception applies.

77. Plaintiff and the Class are entitled to relief under 18 U.S.C. § 2520, including the greater of actual damages plus any profits made by Defendant through the interception, or statutory damages of $100 per day per violation or $10,000, whichever

is greater, together with punitive damages, reasonable attorney's fees, and litigation costs.

## X. THIRD CAUSE OF ACTION

### Violation of the California Constitution, Article I, Section 1

### By Plaintiff and the Class Members Against Defendant

78. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

79. Plaintiff brings this cause of action on behalf of herself and the Class.

80. Article I, Section 1 of the California Constitution provides that privacy is among the inalienable rights of all people in California. To state a claim for violation of the constitutional right to privacy, a plaintiff must establish: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by the defendant constituting a serious invasion of privacy.

81. Plaintiff and Class Members have a legally protected privacy interest in the contents of their electronic communications with the Website, including the specific page URLs reflecting their browsing activity. California law recognizes a legally protected privacy interest in personal browsing activity, particularly when that activity is covertly intercepted by commercial third parties for advertising, profiling, and identity-resolution purposes without disclosure or consent.

82. Plaintiff and Class Members had a reasonable expectation of privacy in the contents of their electronic communications with the Website. A reasonable person visiting a commercial-bank consumer-facing website like www.preferredbank.com does not expect that the specific pages they browse, the specific search terms they submit, and the financial calculators and product pages they use will be covertly transmitted to a third-party commercial tracking company in real time, linked to persistent cross-session user profiles, and used for advertising targeting, analytics, and commercial monetization.

83. Defendant's conduct constitutes a serious invasion of that privacy. By deliberately embedding and configuring the Google Analytics trackers on the Website,

Defendant caused the real-time, covert interception of the URL contents of Plaintiff's and Class Members' electronic communications and their transmission to a third party where they were linked to persistent cross-session profiles and used for commercial advertising and analytics purposes without Plaintiff's knowledge or consent. The severity of the invasion is heightened by the nature of the Website (a commercial-bank consumer-facing site), the sensitivity of the content browsed (content concerning debt consolidation, including Plaintiff's verbatim on-site search query "Debt consolidation" and her use of the Debt Consolidation Calculator), the persistent and cross-site nature of the identifiers used, and the commercial exploitation of the intercepted data.

84. As a result of Defendant's invasion of their privacy, Plaintiff and Class Members have suffered harm, including loss of privacy, loss of control over their personal information, and the unauthorized commercial exploitation of their browsing activity. Plaintiff and the Class seek injunctive relief, nominal damages, and all other relief authorized by law.

## XI. FOURTH CAUSE OF ACTION

### Intrusion Upon Seclusion

### By Plaintiff and the Class Members Against Defendant

85. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

86. Plaintiff brings this cause of action on behalf of herself and the Class.

87. The common law tort of intrusion upon seclusion requires: (1) an intentional intrusion, physically or otherwise, into a place, conversation, or matter in which the plaintiff has a reasonable expectation of privacy; and (2) that the intrusion would be highly offensive to a reasonable person.

88. Defendant intentionally intruded into Plaintiff's and Class Members' electronic communications with the Website by deliberately embedding the Google Analytics trackers, which intercepted the URL contents of those communications in real time and transmitted them to a third party without Plaintiff's knowledge or consent.

Plaintiff had a reasonable expectation of privacy in the contents of those communications.

89. The intrusion is highly offensive to a reasonable person. Defendant covertly deployed tracking technologies that captured the specific content Plaintiff was browsing, including her verbatim on-site search for “Debt consolidation” and her use of the Debt Consolidation Calculator, and transmitted it to a third-party commercial entity for advertising targeting and analytics. The covert and non-consensual nature of the interception, the nature of the Website as a commercial-bank consumer-facing site and the sensitivity of the content browsed, the commercial exploitation of the intercepted browsing activity for advertising and data-analytics purposes, and the use of persistent identifiers to build comprehensive user profiles without disclosure all render the intrusion highly offensive to a reasonable person.

90. As a result of Defendant’s intrusion upon their seclusion, Plaintiff and Class Members have suffered harm, including loss of privacy, emotional distress, and the unauthorized exploitation of their personal information. Plaintiff and the Class seek compensatory damages, nominal damages, injunctive relief, and all other appropriate relief.

## XII. FIFTH CAUSE OF ACTION

### Quasi-Contract / Restitution Based on Unjust Enrichment

### By Plaintiff and the Class Members Against Defendant

91. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

92. Plaintiff brings this cause of action on behalf of herself and the Class.

93. Unjust enrichment requires: (1) a benefit conferred on the defendant; (2) at the expense of the plaintiff; and (3) circumstances that make it inequitable for the defendant to retain the benefit without compensating the plaintiff.

94. Defendant received a benefit by permitting third parties to deploy their tracking technologies on the Website. In exchange for allowing those third parties to

intercept and collect the URL contents of visitors' communications with the Website, Defendant received the analytics, audience-measurement, and marketing functionality that the Google Analytics products provide, including reporting on visitors' browsing of Defendant's financial-product pages, on-site calculators, and on-site searches. That functionality has commercial value to Defendant, and Defendant obtained it without compensating Plaintiff and Class Members for the browsing content from which it was derived. Google LLC's separate receipt and independent use of that same content, alleged above, is in addition to and does not diminish the benefit Defendant obtained.

95. Defendant received this benefit at Plaintiff's and Class Members' expense. Plaintiff's and Class Members' browsing data constitutes personal property with recognized economic value in the digital advertising marketplace. By intercepting the URL contents of Plaintiff's communications and transmitting them to third-party trackers, Defendant and their tracking partners extracted the commercial value of that data without compensation. Plaintiff and Class Members also suffered the loss of control over their personal information, which has recognized economic value as a privacy-protective property interest.

96. It is inequitable for Defendant to retain the benefits of their data-for-services arrangement without compensating Plaintiff and Class Members whose browsing activity was the source of that commercial value. Defendant's concealment of the tracking arrangement and their failure to obtain Plaintiff's and Class Members' informed consent render retention of those benefits unjust.

97. Plaintiff and the Class seek restitution and disgorgement of all amounts by which Defendant was unjustly enriched at Plaintiff's and Class Members' expense.

## XIII. PRAYER FOR RELIEF

98. WHEREFORE, Plaintiff prays for the following:

1. An order certifying the Class, naming Plaintiff as Class representative, and naming Plaintiff's attorneys as Class counsel;
2. An order declaring that Defendant's conduct violates Cal. Penal Code §

631(a), 18 U.S.C. § 2511(1)(a), Article I, Section 1 of the California Constitution, and the common law prohibition against intrusion upon seclusion;

3. An order enjoining Defendant from continuing the conduct alleged herein;
4. Statutory damages pursuant to Cal. Penal Code § 637.2(a)(1) of $5,000 per violation;
5. Statutory damages pursuant to 18 U.S.C. § 2520 of the greater of actual damages plus any profits made by Defendant through the violation, or $100 per day per violation or $10,000, whichever is greater;
6. Punitive damages pursuant to 18 U.S.C. § 2520;
7. Nominal damages and injunctive relief for violation of Article I, Section 1 of the California Constitution;
8. Compensatory and nominal damages for intrusion upon seclusion;
9. Restitution and disgorgement of all amounts by which Defendant was unjustly enriched at Plaintiff's and Class Members' expense;
10. Prejudgment interest;
11. Reasonable attorney's fees and costs; and
12. Such other and further relief as the Court deems just and proper.

/ / /

/ / /

/ / /

## XIV. DEMAND FOR JURY TRIAL

99. Plaintiff hereby demands a trial by jury on all causes of action and issues so triable.

Respectfully submitted,

Dated: August 25, 2026

**LAW OFFICES OF ROSS CORNELL, APC**

By: /s/ Ross C. Cornell
Ross Cornell, Esq. (SBN 210413)
P.O. Box 1989 #305
Big Bear Lake, CA 92315
Office: (562) 612-1708
Email: rc@rosscornelllaw.com

**NATHAN & ASSOCIATES, APC**
Reuben D. Nathan
2901 W. Coast Hwy., Suite 200
Newport Beach, CA 92663
Office: (949) 270-2798
Email: rnathan@nathanlawpractice.com

*Attorneys for Plaintiff and the Putative Class*